## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JAMES CHITTENDEN,**

       **Plaintiff,**

**v.**                                                   **Case No. 8:19-cv-1504-TPB-AAS**

**HILLSBOROUGH COUNTY,**

       **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Hillsborough County (the County) moves for summary judgment. (Doc. 20). James Chittenden opposes the motion. (Docs. 29, 31).[1] It is **RECOMMENDED** that the County's motion be **GRANTED.**

## I.    BACKGROUND[2]

Mr. Chittenden worked for the County from February 22, 2016 to June 22, 2018. (Doc. 21, p. 1; Doc. 22, Ex. 1, p. 45). Mr. Chittenden worked as a Small

---

[1] Mr. Chittenden filed two response to the County's motion. (*See* Docs. 29, 31). The responses are identical, but Mr. Chittenden attaches different exhibits.

[2] The parties agree to the County's "Statement of Undisputed Facts" (Doc. 21). For the disputed facts, reasonable inferences are drawn in the nonmoving party's favor and evidence favorable to the moving party that the jury need not believe is disregarded. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192–93 (11th Cir. 2004) (discussing judgment as a matter of law); *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986) (stating the standard for summary judgment mirrors the standard for directed verdict).

Business Consultant for the County's Economic Development Department. (Doc. 6, ¶ 11). Carol Minor supervised Mr. Chittenden. (*Id.* at ¶ 12).

Ms. Minor hired Mr. Chittenden to work for the County. (Doc. 21, p. 3; Doc. 22, Ex. 4, p. 53). As part of his duties, Mr. Chittenden had to meet a minimum amount of consulting hours annually.[3] (Doc. 21, p. 2; Doc. 22, Ex. 1, p. 57). The minimum consulting hours requirement was required of all full-time consultants and was a contractual requirement between the County and the University of South Florida's Small Business Development Center. (Doc. 21, p. 2; Doc. 22, Exs. 1, 4). If a consultant does not report the minimum consulting hours required, the consultant's performance review would state he or she did not meet the goal and if he or she continued to not meet the goal, the consultant would be fired. (Doc. 21, p. 2; Doc. 22, Ex. 4, p. 9).

On November 17, 2016, Ms. Minor issued an "Area of Concern Memorandum" to Mr. Chittenden. (Doc. 29, Ex. K). Mr. Chittenden had not timely filed his client contact reports, had failed to meet deadlines set, and did not complete the consulting hours required.[4] (*Id.*). On July 14, 2017, Ms. Minor issued another "Area of Concern Memorandum" to Mr. Chittenden. (*Id.*). The

---

[3] The fiscal year ran from October 1 to September 30. (Doc. 22, Ex. 1, p. 64).

[4] When Mr. Chittenden started with the County and because of his experience in working with start-up businesses, Ms. Minor required Mr. Chittenden to achieve 750 consulting hours by the end of 2016. (Doc. 29, Ex. K).

2

second memorandum stated Mr. Chittenden again had not timely filed his client contact reports and failed to meet deadlines. (*Id.*). Ms. Minor also noted Mr. Chittenden had overstated his preparation hours and warned that he could record only one-hour for preparation time. (*Id.*).

In 2017, Mr. Chittenden recorded 903 consulting hours, but Ms. Minor subtracted hours resulting in Mr. Chittenden only having 827 hours for the 2017 fiscal year. (Doc. 22, Ex. 1, pp. 58–59). Mr. Chittenden stated Ms. Minor would give him the methodology on how the consulting hours would be counted but that she would change the methodology at some point and would apply it retroactively. (*Id.* at p. 59). Ms. Minor stated she reduced his hours that were not attributable to consulting. (Doc. 22, Ex. 4, p. 29).

On February 12, 2018, Ms. Minor wrote up Mr. Chittenden. (Doc. 29, Ex. E). The memo addressed Mr. Chittenden's conduct and Ms. Minor's concerns about Mr. Chittenden's performance. (*Id.*). The memo explained Mr. Chittenden failed to meet his first quarter consulting hours (he was at 19% and should have been at 33%), his work shows an inability to work with the clients, and he did not timely submit his monthly contact reports. (*Id.*; Doc. 22, Ex. 1, p. 64). After receiving this write up, Mr. Chittenden contacted Bobbie Aggers in Human Resources to address this write-up because he thought he was not being treated like the other consultants. (Doc. 22, Ex. 1, pp. 101–02).

3

Mr. Chittenden stated his female co-workers were only at 19% of their consulting hours by the end of the first quarter but they did not receive a write up like Mr. Chittenden did. (Doc. 22, Ex. 1, p. 108; *see also* Doc. 29, Ex. D (providing Dottie Minnick's time card)). Mr. Chittenden also spoke with Lindsey Kimball, the Director of Economic Development, about his concerns. (Doc. 22, Ex. 1, p. 60; Doc. 29, Ex. C).

Following the write up in February 2018, Mr. Chittenden recorded 104.50 hours in March and 85.50 hours in April. (Doc. 31, Ex. N). Ms. Minor reduced Mr. Chittenden's hours in March to 81 hours and in April to 74.75 hours. (*Id.*). Ms. Minor testified that she reduced the hours because they were not consulting hours, noting specifically that he counted work done by others as his own. (Doc. 22, Ex. 4, p. 40).

On May 9, 2018, Ms. Minor issued another memorandum titled "Continued Work Performance Deficiencies" and administered a special performance appraisal. (Doc. 31, Ex. M). In the memo, Ms. Minor noted the partial list of issues included that Mr. Chittenden argued about methodology rather than implementing protocols required for his position, failed to achieve required monthly consulting hours, failed to consistently and sufficiently participate in outreach activities, failed to manage partner relationships, failed to timely deliver required reports, and failed to update his calendar as

4

required. (*Id.*). In the memo, Ms. Minor noted she had previously discussed these issues with Mr. Chittenden. (*Id.*). In the special performance appraisal, Mr. Chittenden received a 1.8 performance rating defined as unacceptable. (Doc. 31, Ex. Q).

On May 1, 2018, without the County's knowledge, Mr. Chittenden submitted an Equal Employment Opportunity Commission (EEOC) Inquiry by submitting an online report about what was happening at work. (Doc. 22, Ex. 1, p. 88). On the same day, the County began the process to terminate Mr. Chittenden's employment. (*See id.* at p. 90). On May 7, 2018, Mr. Chittenden emailed Mr. Matthew Stewart, the Human Resources Manager, to let him know that he had submitted the EEOC Inquiry. (*Id.*). On June 22, 2018, unknown to the County, Mr. Chittenden met with the EEOC investigator. (Doc. 31, Ex. R). Mr. Chittenden's charge is based on gender discrimination and retaliation. (*Id.*).

Also on June 22, 2018, the County Administrator issued a memo recommending the dismissal of Mr. Chittenden. (Doc. 31, Ex. T). Mr. Stewart asked to meet with Mr. Chittenden that same day. (Doc. 22, Ex. 1, p. 92). Mr. Chittenden could not meet Mr. Stewart because of a family emergency, but Mr. Chittenden also informed Mr. Stewart at that time that he had just met with an EEOC investigator. (Doc. 31, Ex. S). Because the County had authorized

5

Mr. Chittenden's termination, Mr. Stewart emailed Mr. Chittenden to let him know that he was fired. (*Id.*).

Mr. Chittenden sued the County for gender discrimination and retaliation under 42 U.S.C. § 1981 and the Florida Civil Rights Act (FCRA). (Doc. 6). The County moves for summary judgment on all claims. (Doc. 20). Mr. Chittenden opposes. (Docs. 29, 30).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show there is no genuine disputed issue of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if it is a legal element of the claim that may affect the outcome under the substantive governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A dispute about a material fact is "genuine" if a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, the court must view the evidence and all factual inferences drawn in the light most

favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## III.   ANALYSIS

### A.   Section 1981 Claims

Mr. Chittenden pleaded gender discrimination under 42 U.S.C. § 1981. (Doc. 6, ¶ 1). The Eleventh Circuit held that Section 1981 does not provide a cause of action against state actors. *Butts v. Cty. Of Volusia*, 222 F.3d 891, 894

(11th Cir. 2000). Instead, a plaintiff can sue the county under Section 1983. *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 733 (1989) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981."). However, Mr. Chittenden brought his suit under Section 1981, instead of Section 1983. Thus, Mr. Chittenden's claim for gender discrimination under 42 U.S.C. § 1981 should be dismissed with prejudice.

## B.    The Florida Civil Rights Act

Mr. Chittenden alleges he experienced gender discrimination and retaliation under the Florida Civil Rights Act (FCRA). (Doc. 6, ¶ 1, 35). The FCRA prohibits an employer from discharging an employee based on sex and from retaliating against an employee for protesting allegedly unlawful discriminatory practices. Fla. Stat. § 760.10(1)(a), (7). Because the FCRA was patterned after Title VII, FCRA claims for gender discrimination and retaliation are analyzed under the same Title VII framework in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).[5] *See DeBose v. USF Bd. of Trustees*, 811 F. App'x 547, 553–54 (11th Cir. 2020).

---

[5] Mr. Chittenden does not dispute the County's use of the *McDonnell Douglas* framework nor does he state that there is direct evidence of discrimination. (*See* Doc. 29). Thus, Mr. Chittenden's claim rests on circumstantial evidence. *See Luke v. Univ. Health Servs., Inc.*, No. 19-13788, 2021 WL 289307, at *2 (11th Cir. Jan. 28, 2021).

### 1.    Gender Discrimination

Under the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of gender discrimination. *See Lewis v. City of Union City, Ga.*, 918 F.3d 1214, 1224 (11th Cir. 2019). "The establishment of a prima facie case creates a presumption that the employer discriminated against the plaintiff." *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015).

Once the plaintiff establishes a prima facie discrimination case, the burden of production shifts to the defendant to rebut the presumption. *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). "Once the employer advances its legitimate, nondiscriminatory reason, the plaintiff's prima facie case is rebutted and all presumptions drop from the case." *Flowers*, 803 F.3d at 1336 (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 405 U.S. 248, 255 (1981). If the defendant can carry this burden, then the plaintiff must prove the defendant's reasons were a pretext for discrimination. *Lewis*, 918 F.3d at 1221.

### a.    Prima Facie Case

To establish his prima facie case of gender discrimination, Mr. Chittenden must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform his job; and (4) the County treated similarly situated females more favorably. *See*

9

*Lewis*, 918 F.3d at 1220–21. The County does not dispute that Mr. Chittenden can satisfy the first two elements. (Doc. 20, p. 2). For the third and fourth elements, however, the County argues Mr. Chittenden was not qualified to do the job and cannot show the County treated similarly situated female employees differently. (*Id.* at pp. 3–5). Thus, the County argues Mr. Chittenden cannot establish a prima facie case for gender discrimination.

### i.    Qualified to do the job

To prove that he was qualified for the position, the plaintiff needs to show he "satisfied an employer's objective qualifications." *Vessels v. Atlanta Independent Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005). The prima facie case includes "only evidence that is *objectively verifiable* and either easily obtainable or within the plaintiff's possession."[6] *Id.* (citing *Walker v. Mortham*, 158 F.3d 1177, 1192–93 (11th Cir. 1998)).

The County argues Mr. Chittenden was not qualified for the job because he failed to perform his job duties by not meeting the minimum consulting hours requirement. (Doc. 20, pp. 3–4). Mr. Chittenden argues he was qualified for his position and only failed to meet the minimum consulting hours

---

[6] "The employer may then introduce its subjective evaluations of the plaintiff at the later stages of the *McDonnell Douglas* framework. A contrary rule, under which an employer's subjective evaluation could defeat the plaintiff's initial prima facie case, cannot be squared with the structure and purpose of the *McDonnell Douglas* framework." *Vessels*, 408 F.3d at 769.

requirement because his supervisor, Ms. Minor, prevented him from meeting that requirement by cutting his hours in a subjective manner. (Doc. 29, pp. 6–7).

The County does not argue that Mr. Chittenden's professional qualifications did not make him qualified for the position but argues Mr. Chittenden failed to meet an objective requirement of the job, completing the minimum consulting hours requirement. Even though the minimum consulting hours requirement is objectively verifiable and Mr. Chittenden acknowledged that he did not meet the requirement in 2016 and 2017, Mr. Chittenden asserts Ms. Minor subjectively reduced those consulting hours. (*See* Doc. 22, Ex. 1, p. 59). Additionally, Mr. Chittenden stated he would have met his requirement for 2018 but Ms. Minor subjectively reduced his consulting hours. (*See* Doc. 31, Ex. N). Ms. Blanco and Ms. Minnick testified that Ms. Minor also reduced their consulting hours. (Doc. 22, Ex. 5, p. 8; Doc. 22, Ex. 6, p. 13). Ms. Minor testified that she reduced hours that were not attributable to consulting. (Doc. 22, Ex. 4, p. 29). Because evidence is construed in the nonmoving party's favor, the court must conclude Mr. Chittenden would have met the minimum consulting hours requirement had Ms. Minor not subjectively reduced his hours. *See Cleveland*, 369 F.3d at 1193. Thus, construing those facts in Mr. Chittenden's favor, Mr. Chittenden was qualified

11

to perform the job.

### ii.   Treatment of similarly situated employees outside of the protected class

The County argues Mr. Chittenden cannot show the County treated similarly situated female employees more favorably. (Doc. 20, p. 4). The County contends that Dottie Minnick and Janette Blanco, the comparators identified by Mr. Chittenden, are not appropriate comparators. (*Id.* at pp. 4–5). A comparator must be "similarly situated in all material respects," meaning the plaintiff and comparators are "sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Lewis*, 918 F.3d at 1224, 1228 (quotation omitted). Although this standard requires a case-by-case analysis, a similarly situated comparator will ordinarily have "engage[d] in the same basic conduct (or misconduct) as the plaintiff," "been subject to the same employment policy, guideline, or rule," shared "the same supervisor," and "share[d] the plaintiff's employment or disciplinary history." *Id.* at 1227–28.

Ms. Minnick is the Manager of Community Outreach with Hillsborough County Economic Development. (Doc. 22, Ex. 5, p. 4). Her job duties include consulting and teaching workshops, but she also purchases for their section and tracks grant money. (*Id.* at pp. 6–7). Ms. Minor was Ms. Minnick's supervisor. (*Id.* at p. 8). Like Mr. Chittenden, Ms. Minnick did not make her

12

hours, but Ms. Minor did not write her up for that issue (she was written up on an unrelated incident). (*Id.* at p. 13). Differing in a material respect from Mr. Chittenden, Ms. Minnick is not subject to the same rule that requires her to complete the same amount of consulting hours as Mr. Chittenden. (*Id.* at p. 6). Instead, Ms. Minnick's consulting hours requirement decreased as her other job duties expanded to include tracking the financials and grant money for the section. (*Id.* at p. 7). Mr. Chittenden's job duties did not include these requirements. (*See* Doc. 22, Ex. 1, pp. 43–44). Thus, Ms. Minnick is not a proper comparator.

Ms. Blanco works as a Manager of Consulting Outreach with Hillsborough County Economic Development. (Doc. 22, Ex. 6, p. 6). Her job duties include consulting and teaching workshops. (*Id.* at pp. 9–10). Like Mr. Chittenden, Ms. Minor supervises Ms. Blanco, and Ms. Blanco must complete the minimum consulting hours requirement. (*Id.* at pp. 6–7). Unlike Mr. Chittenden, Ms. Blanco testified that she has always satisfied that requirement even though Ms. Minor has also reduced her consulting hours. (*Id.* at p. 8). Even though Mr. Chittenden states other employees had the same 19% completion of consulting hours in 2018 like Mr. Chittenden, Mr. Chittenden provides no evidence to support this for Ms. Blanco. (*See* Doc. 22, Ex. 1, p. 108). However, assuming that Ms. Blanco was one of the other

employees, she differs in a material respect from Mr. Chittenden because Ms. Blanco has no disciplinary history. Instead, Mr. Chittenden was repeatedly warned that failing to meet his requirements would lead to his termination. Thus, Ms. Blanco is not a proper comparator.

Because none of Mr. Chittenden's alleged female comparators are similarly situated in all material respects, Mr. Chittenden fails to establish the County treated him less favorably than a similarly situated individual outside his protected class. Thus, Mr. Chittenden fails to establish a prima facie case of gender discrimination. Even though the undersigned concludes Mr. Chittenden did not establish a prima facie case of gender discrimination, the undersigned will address the remaining prongs under the *McDonnell Douglas* framework.

### b.    Legitimate, Nondiscriminatory Reason

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to rebut the presumption to offer legitimate, nondiscriminatory reasons for the adverse actions. *Brooks*, 446 F.3d at 1162. The defendant's burden is to "produce evidence that could allow a rational fact finder to conclude" the defendant's actions were not motivated by discriminatory animus. *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998).

The County argues the reason for dismissing Mr. Chittenden was Mr. Chittenden's failure to meet the minimum consulting hours requirement in any year he worked for the County. (Doc. 20, p. 5). "[J]ob performance, failure to follow instructions, and insubordination are all legitimate, nondiscriminatory considerations." *Ashe v. Aronov Homes, Inc.*, 354 F. Supp. 2d 1251, 1259 (M.D. Ala. 2004); *see also Lui v. University of Miami*, 138 F. Supp. 3d 1360, 1373 (S.D. Fla. 2015). Thus, the County satisfies the burden of providing a legitimate, nondiscriminatory reason for firing Mr. Chittenden.

### c.    Pretext

Under the *McDonnell Douglas* shifting framework, the plaintiff must show the employer's articulated legitimate, nondiscriminatory reason is pretextual. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). "A reason is pretextual only if it is false and the true reason for the decision is discrimination." *Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 303 (11th Cir. 2020); *Langford v. Magnolia Adv. Mat., Inc.*, 709 F. App'x 639, 641 (11th Cir. 2017) ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

There must be sufficient evidence of pretext to "allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not

believable." *Brooks*, 446 F.3d at 1163. The plaintiff must provide sufficient evidence to show "both that the reason was false, and that discrimination was the real reason." *Id.* To do so, the plaintiff "'must meet the [employer's] reason head on and rebut it.'" *Alvarez v. Royal Atl. Dev., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (quoting *Chapman,* 229 F.3d at 1030). "The focused inquiry … requires the plaintiff to demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation omitted)).

Mr. Chittenden argues the County's reason for firing him—failure to obtain the minimum consulting hours—is false because he billed over the minimum consulting hours. (Doc. 29, p. 8). Mr. Chittenden also asserts Ms. Minor deliberately reduced his consulting hours because she "hates men" and applied the requirement differently to women. (*Id.*). Mr. Chittenden asserts he could reach the minimum consulting hours had it not been for the intense scrutiny and interference from Ms. Minor. (*Id.*).

Rather than challenge the County's reason for firing him head on and rebut it, Mr. Chittenden argues with the wisdom of that reason. *See Chapman*,

229 F.3d at 1030. Mr. Chittenden's arguments are not supported by the evidence. At his deposition, Mr. Chittenden acknowledged that he did not meet the consulting hours requirement in 2016 or 2017. (Doc. 22, Ex. 1, pp. 58–59). For 2017, Mr. Chittenden blames Ms. Minor for him failing to meet the consulting hours requirement because he said he turned in his time sheet reflecting 903 hours, but she reduced the hours to 827. (*Id.* at p. 59). Mr. Chittenden asserts Ms. Minor cut his consulting hours but did not cut the consulting hours of women Ms. Minor supervised. However, Ms. Blanco and Ms. Minnick both testified that Ms. Minor would reduce their hours if Ms. Minor determined the hours were not actual consulting hours. (Doc. 22, Ex. 5, p. 8; Doc. 22, Ex. 6, p. 13).

Mr. Chittenden's argument that he would have performed better if not for Ms. Minor interfering with his hours fails to rebut the County's proffered legitimate reason for firing him (i.e., his inability to perform his job duties). "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Mitchell v. City of LaFayette*, 504 F. App'x 867, 871 (11th Cir. 2013). The evidence supports the County's proffered reason that Mr. Chittenden was fired for failure to fulfill his job duties, notably failing to meet the minimum consulting hours requirement. The County put Mr. Chittenden on notice of what was expected of him and his

job duties and also addressed it with him when he was not making his consulting hours. (*See* Doc. 22, Exs. 2, 3, 4). The evidence provided by Mr. Chittenden shows Mr. Chittenden was not fulfilling his job duties and he knew he was not. (*See* Doc. 29, Ex. E; Doc. 30, Ex. M). Thus, Mr. Chittenden has not shown a genuine issue of material fact as to whether the County's legitimate, nondiscriminatory reason for his firing was pretextual.

*     *     *

The undersigned recommends granting the County's motion for summary judgment for gender discrimination because Mr. Chittenden cannot establish a prima facie case of gender discrimination. Additionally, even if Mr. Chittenden could establish a prima facie case of gender discrimination, Mr. Chittenden cannot show the County's legitimate, nondiscriminatory reason for his firing was pretextual.

### 2.   Retaliation

"Retaliation claims are reviewed under the same *McDonnell Douglas* burden-shifting framework." *Boone v. Publix Super Markets, Inc.*, No. 8:18-cv-2523-T-60TGW, 2020 WL 1694163, at *7 (M.D. Fla. Apr. 7, 2020). First, the plaintiff must establish a prima facie case of retaliation. *Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020). Once the plaintiff establishes a prima facie retaliation case, the burden of production shifts to the defendant

to rebut the presumption. *Id.* If the defendant can carry this burden, then the plaintiff must prove that the legitimate reasons offered by the employer for undertaking the adverse employment action were pretextual. *Id.*

To establish a prima facie retaliation case, the plaintiff must show: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Johnson*, 948 F.3d at 1325; *see also Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2010).

A plaintiff must merely prove the protected activity and the negative employment action are not wholly unrelated. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). To prove causation, the plaintiff must "show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). "[C]lose temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Id.* The plaintiff must also establish that his protected activity was a but-for cause of the adverse employment decision. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

19

The County does not dispute that Mr. Chittenden can satisfy the first two elements. (Doc. 20, p. 7). The County identifies three communications that the County considers Mr. Chittenden's statutorily protected activity. (*Id.*). The County argues there is no evidence of a causal connection between those three communications and the County's decision to fire Mr. Chittenden, so Mr. Chittenden cannot present a prima facie case of retaliation. (*Id.*). Mr. Chittenden argues he meets the causal connection between the statutorily protected activity and the adverse employment action. (Doc. 29, pp. 8–9).

The first communication is Mr. Chittenden's February 12, 2018 meeting with Ms. Aggers in Human Resources. (*See* Doc. 22, Ex. 1, p. 101). Mr. Chittenden met with Ms. Aggers and told her he felt he was being treated differently than the other people in the office, but was not sure why it was happening and was unsure if it was because of his race. (*Id.* at p. 102). Mr. Chittenden was dismissed from his job with the County on June 22, 2018, over four months after Mr. Chittenden's meeting with Ms. Aggers. (*See* Doc. 21, p. 1). The temporal proximity between this meeting and Mr. Chittenden's dismissal is not close enough. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."); *see also Williams v. Waste Mgmt. Inc.*, 411 F. App'x 226, 229–30 (11th Cir. 2011)

20

(finding two-month gap as not very close); *Boone*, 2020 WL 1694163, at *8 (determining over two months "is too great to allow temporal proximity to carry Boone's claim").

The second communication is Mr. Chittenden's inquiry to the EEOC on May 1, 2018. (Doc. 22, Ex. 1, p. 88). On May 7, 2018, Mr. Chittenden told Mr. Stewart, a Human Resource official, that he had filed the inquiry with the EEOC. (*Id*.). But the County had already started the process to dismiss Mr. Chittenden from his job on May 1, 2018. (*Id*. at p. 90). The third communication was Mr. Chittenden's EEOC charge of discrimination that he filed on June 22, 2018. (*Id*. at p. 92). The County terminated Mr. Chittenden's employment on June 22, 2018. (*Id*. at p. 93; Doc. 30, Ex. T).

The time between these two communications and the County terminating Mr. Chittenden's employment is in close temporal proximity. Despite this close proximity, "other circumstances can negate the inference of causation that may arise from temporal proximity." *Hill v. SunTrust Bank*, No. 6:15-cv-890-Orl-28DCI, 2017 WL 253850, at *9 (M.D. Fla. Jan. 19, 2017). "[W]hen an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.

2006).

Mr. Chittenden does not dispute that the County began the process of terminating his employment before he informed them of his EEOC inquiry. (*See* Doc. 22, Ex. 1, p. 90). The County also did not know of Mr. Chittenden's meeting with the EEOC investigator until after the meeting occurred and the County authorized the termination of Mr. Chittenden's employment. (*See* Doc. 31, Ex. S). The evidence also shows that since almost the beginning of Mr. Chittenden's employment with the County, Mr. Chittenden received warnings about his failure to meet the consulting hours requirement. (*See* Doc. 22, Exs. 2, 3, 4; Doc. 29, Ex. E; Doc. 30, Ex. M). "[A]nti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010).

Mr. Chittenden failed to establish a causal connection between any of the three instances of statutorily protected activity and his termination. Thus, Mr. Chittenden fails to establish a prima facie case of retaliation.

Even though the undersigned concludes Mr. Chittenden did not establish a prima facie case of retaliation, the undersigned will address the remaining prongs under the *McDonnell Douglas* framework for Mr. Chittenden's

retaliation claim. As addressed in Mr. Chittenden's gender discrimination claim, the County fired Mr. Chittenden for failure to perform his job duties, specifically meeting the minimum consulting hours requirement, and that reason satisfies the County's burden of providing a legitimate, nondiscriminatory reason for firing Mr. Chittenden.

The burden shifts back to Mr. Chittenden to show the County's articulated legitimate, nondiscriminatory reason is pretextual. The County argues Mr. Chittenden cannot show a retaliatory motive because the record shows he was fired because he failed to perform his job duties. (Doc. 20, pp. 9–10). Mr. Chittenden has offered no evidence to support an argument that the County's reason was pretextual. On the contrary, Mr. Chittenden received many notices that if he failed to meet the job duties, he could be terminated. Even construing the facts in Mr. Chittenden's favor, he cannot show that the County's legitimate, nondiscriminatory reason for his firing was pretextual.

*     *     *

The undersigned recommends granting the County's motion for summary judgment for retaliation because Mr. Chittenden cannot establish a prima facie case of retaliation. Even if Mr. Chittenden could establish a prima facie case of retaliation, Mr. Chittenden failed to present evidence that the County's legitimate, nondiscriminatory reason for his firing was pretextual.

23

## IV.   CONCLUSION

Viewing the evidence in the light most favorable to the Mr. Chittenden, no reasonable jury could conclude that the County discriminated against Mr. Chittenden or retaliated against him. Thus, it is **RECOMMENDED** that the County's motion for summary judgment (Doc. 20) be **GRANTED**.

**ENTERED** in Tampa, Florida on March 15, 2021.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## **NOTICE TO PARTIES**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.

24